**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                   :
RASHFORD EMANUAL GALLOWAY,         :
                                   :        Civil Action
              Petitioner,          :        08-1924 (NLH)
                                   :
         v.                        :        **O P I N I O N**
                                   :
BUREAU OF PRISONS,                 :
                                   :
              Respondent.          :
_____:


APPEARANCES:

        RASHFORD EMANUAL GALLOWAY, Petitioner pro se
        #17700-058
        Federal Correctional Institution Fort Dix
        Fort Dix, New Jersey 08640


Noel L. Hillman, District Judge

        On April 10, 2008, Petitioner Rashford Galloway

("Petitioner"), currently confined at the Federal Correctional

Institution Fort Dix, Fort Dix, New Jersey, filed an application

for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241

("Petition"), seeking various forms of relief.  See Docket Entry

No. 1.  The Clerk received the Petition on April 21, 2008, and

docketed it the next day.  See Docket Sheet.  As of the date of

issuance of this Opinion and accompanying Order, Petitioner has

not submitted either his filing fee or his application to proceed

in this matter in forma pauperis.[1]  See Docket Entry No. 1.

---

[1]  The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it may otherwise fail to comply with [Habeas] Rule 2.  The [R]ule . . . is not limited to those instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the petition even though it lack[s] the required filing fee or an in forma pauperis form." 28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am. However, Section 1914, the filing fee statute, provides in relevant part that "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5."  28 U.S.C. § 1914(a).  The accompanying provision, Section 1915, governs applications filed in forma pauperis and provides, in relevant part, that leave to proceed in forma pauperis may be granted in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses [if such affidavit demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); see also Smith v. Bennett, 365 U.S. 708, 712, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961) ("[W]hile [$ 5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]"); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001).  Therefore, within thirty days from the date of entry of the Order accompanying this Opinion, Petitioner must submit his filing fee of $ 5 or his affidavit of poverty, regardless of the outcome of this litigation.  Cf. Kemp v. Harvey, 2006 U.S. Dist. LEXIS 8939, at 18 n.6 (D.N.J. Mar. 3, 2006) (observing that "it would be indeed anomalous to allow persons [stating no cognizable claim] to usurp judicial resources and bring claims without payments while obligating every litigant [stating a cognizable claim] to pay the fee").  The Court, hence, expressly notifies Petitioner that his failure to submit the filing fee or his in forma pauperis application in a timely fashion will entitle the Clerk to institute action for collection of the fee for this action in light of Petitioner's implied consent to such collection through Petitioner's filing of the instant Petition.  Accord York v. Ala., 2006 U.S. Dist. LEXIS 72160, at *2 n.2 (M.D. Ala. Apr. 18, 2006); Valles v. O'Sullivan, 1998 U.S. Dist. LEXIS 11071, at *2 (N.D. Ill. July 13, 1998) (directing trust fund officer to collect the fee from the inmate's prison trust fund account).

## I.   **BACKGROUND**

Petitioner is currently serving his 150 month federal sentence rendered in April 4, 2003, by Judge Richard L. Voorhees from the United States District Court for the Western District of North Carolina, Charlotte Division.  See Galloway v. United States, 04-0070 (RLV) (W.D.N.C.) ("Galloway I"), Docket Entry No. 2, at 1 (filed on Mar. 3, 2004).  The Petition, a ten-page narrative drafted in a patchwork fashion that is at times difficult to understand, asserts numerous challenges related to Petitioner's federal conviction, as well as to the rendition and execution of Petitioner's federal sentence.  These challenges can be subdivided roughly into three broad groups of arguments.  The first group consists of numerous civil rights challenges, some of which are based on actual facts stated, such as Petitioner's being transferred from state to federal custody (and, hence, arrested for the purposes of his federal criminal charges) pursuant to what Petitioner deems to be an improper detainer[2] and without a probable cause hearing, while others are largely unclear citations to provisions in the Constitution.  Docket

---

[2]  Petitioner bases his allegations on the fact that the entry "charge" in the detainer read "prob viol," see Docket Entry No. 1, at 2, 4, 11, although Petitioner was arrested for the purposes of his federal prosecution not on the basis of any parole violation but rather for controlled substance offenses, pursuant to 21 U.S.C. §§ 841, 846, 952 and 960.  See Galloway v. United States, 04-0070 (RLV) (W.D.N.C.), Docket Entry No. 2, at 1 (filed on Mar. 3, 2004).

Entry No. 1, at 4.

The second group of claims presents challenges to Petitioner's federal conviction and ensuing sentence. Judge Voorhees described the events associated with Petitioner's prosecution on criminal charges (and Petitioner's appeals) as follows:

> On May 7, 2002, Petitioner was indicted [on controlled substance offenses enumerated in the Federal Penal Code, and a federal detainer was issued against Petitioner. Pursuant to that detainer, Petitioner was transferred to Charlotte, North Carolina, for the purposes of his criminal proceedings at the District Court for the Western District of North Carolina ("WDNC")]. On November 4, 2002, Petitioner and the Government filed a plea agreement with [Judge Voorhees,] in which [Petitioner] pled guilty [to two of four controlled substance charges]. On November 8, 2002, Petitioner entered a guilty plea at his Rule 11 hearing. On April 4, 2003, [Judge Voorhees] sentenced Petitioner to 150 months imprisonment. On October 17, 2003, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's sentence and conviction. On . . . December 8, 2003, the United States Supreme Court denied certiorari in Petitioner's case. On February 20, 2004, Petitioner filed [his] Motion to Vacate, Set Aside, or Correct Sentence [i.e., a § 2255 motion, arguing] that the Government violated the terms of his plea agreement by not moving for a downward departure.

Galloway I, at 1-2.

Judge Voorhees revisited Petitioner's case upon Petitioner's filing of his second § 2255 motion, in which Petitioner re-alleged, inter alia, that Petitioner's plea should be deemed withdrawn. See Galloway v. United States, 05-0024 (RLV) (W.D.N.C.) ("Galloway II"), Docket Entry No. 3 (filed on Mar. 31,

2005).  Petitioner's application was denied by Judge Voorhees as second and successive.  See id.  On May 11, 2005, the United States Court of Appeals for the Fourth Circuit denied Petitioner's application to file a successive § 2255 motion.  See In re Galloway, No. 5-0243, Docket Entry No. 4 (4th Cir., filed on May 11, 2005).  Petitioner now revisits the issue of his decision to enter a guilty plea by reasserting the claim that his guilty plea should be deemed withdrawn.  Petitioner explains that such withdrawal would be proper because "the State [court] agreed to run [P]etitioner['] state sentence [c]oncurrent[ly] with his [f]ederal sentence."  Docket Entry No. 2, at 8.

Finally, Petitioner's last group of claims challenges his state plea agreement in light of the Bureau of Prison's ("BOP") decision to deny him credit for the time Petitioner spent in custody serving his state sentence (which preceded his transfer to federal custody for the purposes of serving his WDNC sentence) and the period of confinement prior to imposition of his federal sentence.  See id. at 6-10.

## II.  DISCUSSION

Petitioner's first and second group of claims requires only a brief note.

### A.  Civil Rights Allegations

Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint.  See

Muhammad v. Close, 540 U.S. 749, 750 (2004).  "Challenges to the validity of any confinement or to particulars *affecting its duration* are the province of habeas corpus . . . [while] requests for relief turning on *circumstances of confinement* [fall within the realm of] a § 1983 action."  Id.  The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition.  Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody."  See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).  In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate

form of remedy.[3]  See, e.g., Ganim v. Federal Bureau of Prisons,
235 Fed. App. 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed.
App. 551, 553-54 (3d Cir. 2002).  Since Petitioner's challenges
to his arrest on federal charges--or similar challenges--do not
affect either the fact or the duration of his confinement,
Petitioner's civil rights claims will be dismissed without
prejudice to bringing a civil rights action to that effect.

**B.    Challenges to Petitioner's Federal Conviction/Sentence**

Petitioner's challenges to his federal sentence and
conviction were addressed on numerous occasions by numerous
courts.  In addition to asserting these challenges in his first
and second § 2255 applications dismissed by Judge Voorhees, and

---

[3]  Unlike habeas actions, civil rights cases require a
filing fee, either as a prepayment or a series of installment
payments.  See 28 U.S.C. § 1915.  The filing fee for a habeas
petition is $ 5.00, and inmates filing a habeas petition who are
granted in forma pauperis status do not have to pay the filing
fee.  See Santana v. United States, 98 F. 3d 752 (3d Cir. 1996)
(filing fee payment requirements of PLRA do not apply to in forma
pauperis habeas corpus petitions and appeals).  In contrast, the
filing fee of a civil rights complaint is $ 350.00.  Inmates
filing a civil rights complaint who proceed in forma pauperis are
required to pay the entire filing fee in monthly installments
which are deducted from the prison account.  See 28 U.S.C. §
1915(b).  In addition, if a prisoner has, on three or more
occasions while incarcerated, brought an action or appeal in a
federal court that was dismissed as frivolous or malicious, for
failure to state a claim upon which relief may be granted, or
because it seeks monetary relief from immune defendants, then the
prisoner may not bring another action in forma pauperis unless he
or she is in imminent danger of serious physical injury.  See 28
U.S.C. § 1915(g).  Because of these differences, the court
generally do not sua sponte re-characterize a habeas pleading as
a civil rights complaint.

reiterating the same claims during Petitioner's appeal to the United States Court of Appeals for the Fourth Circuit, Petitioner twice raised the very same challenges in this District by filing applications under § 2241. This Court dismissed Petitioner's challenges in Galloway v. Samuels, Civil Action No. 07-3257 (NLH), 2007 U.S. Dist. LEXIS 74048 (D.N.J. Oct. 3, 2007), and Judge Kugler dismissed Petitioner's repeat of the same allegations in Galloway v. Grondolsky, Civil Action No. 07-5159 (RBK), 2007 U.S. Dist. LEXIS 83779 (D.N.J. Nov. 6, 2007). Consequently, this Court will not construe the Petition as a reassertion of previously dismissed challenges to his federal sentence, but rather interpret the Petition as raising solely two lines of claims: (1) challenges to his state plea agreement; and (2) challenges to the BOP decision.

### C.   Petitioner's State Plea Agreement and BOP's Decision

#### 1. Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3).

This Court has jurisdiction under § 2241 to consider the part of the instant Petition in which Petitioner seeks not to vacate or correct his sentence or to assert civil rights claims,

but to implement the sentence as imposed.  See Rios v. Wiley, 201 F.3d 257, 270-71 (3d Cir. 2000) (where prisoner asserts that BOP failed to effectuate sentence, habeas remedy is appropriate); Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976) (challenging erroneous computation of release date); Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973) (claim for credit for time served prior to federal sentencing).

### 2.  Petitioner's Allegations

Petitioner describes the facts and states his legal arguments as follows:

> On February 7, 2002[,] [P]etitioner . . . was arrested by Pennsylvania . . . police officers and . . . charged with [state-law-based criminal charges].  Petitioner was placed in [Pennsylvania state prison].  On . . . May 7, 2002, a [f]ederal [d]etainer was [lodged] against [P]etitioner.  . . . [T]hirty days after the [detainer was lodged,] the U.S. Marshal[] . . . took custody of [p]etitioner.  [P]etitioner remained in . . . federal [custody] until July 23, 2003[, and, after pleading guilty on federal charges,] Petitioner returned to [state] custody . . . .  On . . . July 28, 2003, . . . [P]etitioner agreed to plea guilty [on state charges] with the understanding that . . . he will receive a [state] sentence run[ning] concurrent [to] his federal sentence.  [When Petitioner completed his state sentence and was transferred to federal custody for the purposes of serving his WDNC federal sentence,] Petitioner requested from the []BOP [a] credit for the time he . . . spent in . . . custody since [the date when federal detainer was lodged against him and] until [the date when he was transferred to federal custody for the purposes of serving his WDNC federal sentence].  On July 24, 2007, the Regional [Office of the BOP] respon[ded] to [P]etitioner . . . stat[ing] that . . . [P]etitioner['s] appeal [was] partially granted, but [he] did not receive [any] credit.  . . .  On Jan[uary] 2, 2008, Petitioner submit[ted an inquiry] to the

> Central Office Appeal . . . requesting [the same]
> credit . . . .  On March 18, 2008, the [C]entral
> [O]ffice denied [P]etitioner['s request].  . . .
> Petitioner [objects] to the [BOP's decision because]
> the judge [who sentenced Petitioner to his state
> sentence made the decision to direct a state sentence
> concurrent to Petitioner's federal sentence]. . . . The
> [BOP] violated [P]etitioner['s] . . . [r]ights[] when
> it refused to give effect to the concurrent service of
> [Petitioner's s]tate and federal sentences.

Docket Entry No. 1, at 2-3, 5-6.

Petitioner attached to his Petition copies of the actual responses Petitioner received from the BOP's Regional Office and the agency's highest panel, the National Inmate Appeals (referred to by Petitioner as "Central Office Appeal").  See id. at 15-17. The attachments indicate that the Regional Office responded to Petitioner's inquiry as follows:

> [R]ecords indicate [that Petitioner was] produced for
> prosecution in federal court pursuant to a Writ of
> Habeas Corpus ad Prosequendum, from the primary custody
> of the State of Pennsylvania.  After Federal
> sentencing, [Petitioner was] returned to the state
> [custody for sentencing and] to complete [his] state
> sentence.  . . . [Petitioner's] federal sentence
> commenced [when he completed serving his state
> sentence].  Prior custody credit is governed by 18
> U.S.C. § 3585(b), which [prohibits the BOP from
> granting credit for an inmate's pre-sentencing period
> of confinement, if that period was credited against the
> inmate's other sentence].  The credit [Petitioner]
> requested [with respect to the period from his arrest
> to his state sentencing] was awarded toward
> [Petitioner's] state sentence and [thus,] cannot be
> awarded to [his] federal sentence pursuant to 18 U.S.C.
> §[]3585(b).  [ However,] as a result of the decision in
> Barden v. Keohane, the [BOP must] consider[] an
> inmate's request to award prior custody credit toward a
> federal sentence for [the] time spent in service of a
> state sentence [that occurred after both federal and
> state sentencing took place] as a request for Nunc Pro

Tunc designation.  [Consequently, Petitioner's] request
for credit toward the service of the federal sentence
[with the time Petitioner spent in state custody after
his state sentencing] has been forwarded to the [office
within the BOP, which is designated to review such
requests] pursuant to Program Statement 5160.03.  . .
. [Petitioner] will be advised of the decision [of that
office] upon completion of [such] review. . . .
[Hence,] to this extent, [Petitioner's] appeal is
partially granted [because the credit for the period
Petitioner spent in custody until his state sentence
was imposed is conclusively denied pursuant to §
3585(b), but Petitioner's request for <u>Barden</u> credit,
that is, for credit with respect to the period
Petitioner spent in custody between his state
sentencing and completion of his state sentence, will
not be conclusively dismissed until it is examined by
this office within the BOP, pursuant to Program
Statement 5160.03].

<u>Id.</u> at 15-16.

Apparently in response to Petitioner's inquiry as to the

outcome of the above-discussed review of his request for <u>Barden</u>

credit, the Office of National Inmate Appeals stated as follows:

[The Office] reviewed [Petitioner's] request [in light
of] the factors delineated in 18 U.S.C. § 3621(b).
[The Office assigned] particular [importance to the
fact that the decision with respect to Petitioner's
federal sentence issued by Judge Voorhees of WDNC was]
silent as to the manner in which [Petitioner's federal]
sentence was to be executed with [respect to the] yet-
to-be-imposed state sentence [nonexisting at the time
of Judge Voorhees' sentencing].  Pursuant to 18 U.S.C.
§ 3584, multiple terms of imprisonment imposed at
different times are [presumed] to [be imposed with
intent to have these different terms of imprisonment]
run consecutively, [that presumption is negated only if
the sentencing court expressly states] otherwise.
[Thus,] an inquiry was sent to [Judge Voorhees]
regarding [Judge Voorhees'] position for a retroactive
. . . designation [of Petitioner's place of service of
his state sentence as a place where Petitioner served
his federal sentence, pursuant to <u>Barden</u>].  Again,
[same as in his sentencing of Petitioner, Judge

Voorhees] did not assert a position [and, having no
express statement from Judge Voorhees, the BOP could
not disturb the presumption that Judge Voorhees
intended Petitioner's federal sentence to run
consecutively rather than concurrently with
Petitioner's state sentence.  After considering, <u>inter
alia</u>, the language of Petitioner's sentence rendered by
Judge Voorhees, his decision not to utilize his power
to expressly sentence Petitioner to a sentence running
concurrently to Petitioner's then-yet-to-be-imposed
state sentence, as well as the fact of Judge Voorhees'
lack of response to the BOP's inquiry, the BOP
exercised its discretion and] determin[ed that] a <u>nunc
pro tunc</u> designation [of Pennsylvania prison where
Petitioner served his state sentence as a place where
Petitioner served part of the sentence imposed by Judge
Voorhees] is not appropriate. . . . Accordingly,
[Petitioner's] appeal [was] denied [as to his request
for <u>Barden</u> credit, that is, as to the issue that was
left unresolved by the Regional Office at the time when
the Regional Office responded to Petitioner].

<u>Id.</u> at 17.

Reading the BOP's explanations in light of his apparent
decision to plea guilty to the state charges only upon the
condition that his state sentence would run concurrently to the
federal sentence imposed by Judge Voorhees, Petitioner now seeks
to withdraw his state plea or, in alternative, asks this Court to
enforce the contractual aspect of his state plea agreement
against the BOP (even though Petitioner does not assert that
either Judge Voorhees or the federal prosecutors, or the BOP was
a party to Petitioner's plea agreement in the state court) and
issue a writ directing the BOP to recalculate Petitioner's
federal sentence factoring in, as a credit, all the time
Petitioner spent in custody from the date of having his federal

detainer lodged and to the date of his transfer to his current federal facility from state custody.  See id. at 9-10.

### 3.  Application for Withdrawal of State Plea Agreement

The part of the Petition indicating Petitioner's interest in withdrawal of his state plea (because Petitioner, allegedly, pled guilty to the state charges only because he was under the impression that his state and federal sentences would necessarily run concurrently if he pled) falls outside this Court's jurisdiction for two reasons: (a) Petitioner is not any longer "in custody," pursuant to his state sentence; and (b) this Court has no jurisdiction to entertain a coram nobis application challenging a decision rendered by a state court.

### a.  The "In Custody" Requirement

Pursuant to § 2254, "a district court shall entertain an application for a writ of habeas corpus on behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (emphasis supplied; applicable to § 2241 petitions through Habeas Rule 1(b)).  A federal court has no jurisdiction to entertain a habeas petition unless the petitioner meets this "in custody" requirement.  Indeed, as the Court of Appeals for the Third Circuit has put it, "custody is the passport to federal habeas corpus jurisdiction."  Dessus v. Commonwealth of Penn., 452 F.2d

557, 559-60 (3d Cir. 1971), cert. denied, 409 U.S. 853 (1972).
The custody requirement is designed "to limit the availability of
habeas review to cases of special urgency, leaving more
conventional remedies for cases in which the restraints on
liberty are neither severe nor immediate."  Barry v. Bergen
County Probation Dept., 128 F. 3d 152, 159 (3d Cir. 1997).

The Supreme Court has interpreted the "in custody"
prerequisite as a requirement that, at the time his petition is
filed, the petitioner must be "in custody" *under the conviction
or sentence he seeks to attack*.  See Maleng v. Cook, 490 U.S.
488, 490 (1989) (per curiam) (citing Carafas v. La Vallee, 391
U.S. 234 (1968)); Young v. Vaughn, 83 F.3d 72, 73 (3d Cir. 1996),
cert. denied sub. nom., Abraham v. Young, 519 U.S. 944 (1996).
Since a habeas petitioner does not remain "'in custody' under a
conviction after the sentence [he seeks to attack] has fully
expired," Maleng, 490 U.S. at 492, Petitioner's allegations that
his *state* plea should be deemed withdrawn cannot present a habeas
challenge over which this Court has jurisdiction.  See Unger v.
Moore, 258 F.3d 1260, 1263 (11th Cir. 2001) ("[F]ederal courts
lack [habeas] jurisdiction over petitions which challenge a
conviction with a completely expired sentence").  Consequently,
in light of Petitioner's failure to meet the "in custody"
requirement, the Court construe Petitioner's challenge to his
state plea agreement as a coram nobis application.

Page -14-

b.   Lack of *Coram Nobis* Jurisdiction

The writ of error coram nobis is an "infrequent" and
"extraordinary" form of relief reserved for "exceptional
circumstances."  United States v. Stoneman, 870 F.2d 102, 106 (3d
Cir. 1989); United States v. Gross, 614 F.2d 365, 368 (3d Cir.
1980) (per curiam); see Carlisle v. United States, 517 U.S. 416,
429 (1996) (noting that the remedy is so extreme that it "is
difficult to conceive of a situation in a federal criminal case
today where [a writ of coram nobis] would be necessary or
appropriate").  An application for a writ of coram nobis is used
to attack allegedly invalid convictions which have continuing
consequences, even though the petitioner has completed serving
the sentence he is attacking and, thus, is no longer "in
custody."  See Stoneman, 870 F.2d at 105-06.  As noted above,
here, it appears apparent that Petitioner's challenges to his
state plea presents a coram nobis application.  However, leaving
aside the issue of whether Petitioner would be able to meet the
stringent requirements associated with the writ of coram nobis,[4]

---

[4]
"The interest in finality of judgments dictates that
the standard for a successful collateral attack on a
conviction be more stringent than the standard
applicable on a direct appeal."  United States v.
Gross, 614 F.2d 365, 368 (3d Cir. 1980).  It is even
more stringent than that on a petitioner seeking habeas
corpus relief under § 2255.  See United States v.
Osser, 864 F.2d 1056, 1060-61 (3d Cir. 1988); United
States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968)
(unlike habeas, where part of sentence remained

this Court simply has no jurisdiction to issue such writ, since a
federal court's power of <u>coram</u> <u>nobis</u> review is limited to
challenges associated with *federal* convictions (and ensuing
*federal* sentences) rendered by that particular federal court:
"[o]nly the court that handed down the judgment of conviction . .
. may entertain . . . a [<u>coram</u> <u>nobis</u>] petition."   <u>Goodman v.</u>
<u>United States</u>, 2005 U.S. App. LEXIS 17950, at *3 (3d Cir. N.J.
2005) (citing <u>Obado v. New Jersey</u>, 328 F.3d 716, 718 (3d Cir.
2003)).   Hence, all Petitioner's allegations challenging his
state plea (as procured by an allegedly unfulfilled promise that
Petitioner's state sentence would run concurrently to his federal
sentence) fall outside this Court's jurisdiction.   Consequently,

---

        unserved, no opportunity or incentive in coram nobis
        setting to retry defendant using newly discovered
        evidence where sentence already served); <u>Stoneman</u>, 870
        F.2d at 106.   Thus, courts have set out three
        requirements for a writ of error coram nobis: (1) the
        petitioner must no longer be "in custody," <u>see</u> <u>Obado</u>[<u>v.</u>
        <u>New Jersey</u>], 328 F.3d 716, 718 [(3d Cir. 2003)]; (2)
        the petitioner must be attacking a conviction with
        "continuing penalties" or "collateral consequences" to
        the petitioner, [<u>see</u>] <u>Osser</u>, 864 F.2d at 1059; and (3)
        the error the petitioner seeks to correct is a
        "fundamental error" for which "there was no remedy
        available at the time of trial and where 'sound
        reasons' exist for failing to seek relief earlier[.]"
        <u>Stoneman</u>, 870 F.2d at 106 (citation omitted).

<u>Evola v. AG of the United States</u>, 2006 U.S. App. LEXIS 18863, at
*4-8 (3d Cir. N.J. July 26, 2006).   Here, since Petitioner was
certainly able to challenge his state sentence during the time he
was serving it, it appears to be highly doubtful that Petitioner
would qualify for a writ of <u>coram</u> <u>nobis</u>.

this aspect of the Petition will be dismissed.

### 4.   Challenges to the BOP's Decision

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, see 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329 (1992), and the Attorney General has delegated that authority to the Director of the BOP.  See 28 C.F.R. § 0.96 (1992).  There are three ways that an inmate can accrue federal jail credit: (1) credit for time spent in custody while actually serving a federal sentence; (2) credit for prior custody under 18 U.S.C. § 3585(b); and (3) credit for time spent in non-federal pre-sentence custody.

However, Habeas Rule 2 provides that a petitioner who seeks relief from different judgments must file a separate petition covering each separate judgment.  See Habeas Rule 2(e).  Since it is apparent that Petitioner is bundling together his: (1) challenges to the BOP's decision to deny him credit; and (2) his challenges to his state plea agreement, Petitioner had to file separate petitions with respect to each of these challenges. Therefore, the Court would construe the instant Petition as Petitioner's challenge to his state plea agreement, over which this Court has no jurisdiction.  The Court will sever Petitioner's allegations with respect to the BOP's decision to deny him credit for the period of time served in state custody

and for pre-sentencing detention, and will direct the Clerk to open a separate and new § 2241 matter for the purposes of addressing these allegations.

## III. CONCLUSION

For the foregoing reasons, this Court finds that Petitioner's civil rights challenges are subject to dismissal without prejudice to Petitioner's filing of timely civil rights complaint asserting his unlawful detention by state authorities based on the federal detainer.  Petitioner's challenges to his state plea agreement will be dismissed for lack of jurisdiction. Petitioner's challenges to the BOP's decision to deny him credit will be severed into a separate matter.  In order to comply with Habeas Rule 2, petitioner will be directed to submit his filing fee with respect to the instant matter, as well as with respect to the newly opened matter, or to file his application to proceed in forma pauperis.  Respondent will be directed to answer Petitioner's challenges in the newly opened matter.

An appropriate Order accompanies this Opinion.


　　　　　　　　　　　　　　s/Noel L. Hillman
　　　　　　　　　　　　　**HON. NOEL L. HILLMAN**
　　　　　　　　　　　　　**United States District Judge**


Dated: October 22, 2008

At Camden, New Jersey